MARSH, Respondent, vs. TOWN OF RICHWOOD, Appellant.

*January 11—January 28, 1902.*

*Taxation: Assessments: Board of review: Presumptions: Circuit courts: Appellate jurisdiction.*

1. In the absence of proof of irregularity or illegality, the action of a board of review is presumed to have been regular and valid.
2. Plaintiff, on application therefor, made a statement of his taxable personal property which was accepted by the assessor and the amount thereof extended on the assessment roll. The board of review, having given plaintiff notice of their intention so to do, raised such assessment. Plaintiff paid the tax on such increased assessment, under protest, and brought suit to recover the excess. *Held*, that it appearing affirmatively that the action of the board of review was in all respects regular, the circuit court had no authority to set aside the tax solely because, in its opinion, the board of review fixed plaintiff's assessment at too high an amount.
3. In such an action the circuit court does not sit as an appellate tribunal from the board of review.

APPEAL from a judgment of the circuit court for Richland county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

This is an action at law to recover alleged illegal taxes which were paid under protest. The action was tried by the court without a jury. The evidence showed that prior to March 5, 1898, the plaintiff, an old gentleman of the age of seventy-one years, owned a valuable farm in the defendant town, and upon the last-named date deeded the same to his son Albert S. Marsh, who returned to his father and mother a mortgage thereon, conditioned to perform the obligations of a certain contract and bond of the same date. The contract referred to was executed by Albert S. Marsh and Clara Marsh, his wife, to *Stephen B. Marsh* and Rebecca Marsh, and by its terms the said Albert S. Marsh and Clara Marsh, in consideration of the transfer of said farm, which was recited to be of the value of $8,000, bound themselves to provide for and support said *Stephen B. Marsh* and Rebecca Marsh during their lives, and for such purpose to furnish each year to said *Stephen* and Rebecca the sum of $400 while they or either of them lived, and, in case said sum should be insufficient, by reason of sickness, for their support, then to advance a sufficient sum additional to cover all expenses of maintenance, medical care, and attendance. Said contract further provided that after the death of both *Stephen* and Rebecca, Albert should pay $2,000 to James A. Marsh, a brother, $2,000 to Margaret R. Elliot, a sister, and $1,000 each to Earl B. and Bessie M. Elliot, children of a deceased sister; all to be paid within one year after the death of the survivor of the said *Stephen* and Rebecca Marsh. The bond aforesaid was in the penal sum of $8,000, and was conditioned to perform the obligations of the contract, and was signed by Albert S. Marsh and Clara Marsh. In May, 1899, the assessor of the defendant town applied to *Stephen Marsh* for a statement of his taxable property, and he made a statement thereof in which he placed the value of his horses at

$40, cattle $42, swine $75, moneys, accounts, notes, and mortgages $200; being a total of $357. This statement was accepted by the assessor, and the plaintiff was assessed the sum of $357 upon the assessment roll. The board of review gave the plaintiff due notice of their intention to raise said assessment, and the plaintiff appeared, and produced before the board the mortgage, contract and bond aforesaid, and was examined by the board, and thereupon the board raised his assessment of personal property to $2,157. Upon this valuation the plaintiff's taxes amounted to $44.56, which was $37.10 in excess of what they would have been had the valuation remained the same as the assessor placed it. The court made findings in substance as follows: (1) That the plaintiff was a resident of the defendant town; (2) that in May, 1899, he was examined under oath, and made a true statement in writing of his personal property liable to taxation, showing the value thereof to be $357, which was accepted by the assessor of said town; (3) that thereafter the board of review added to the assessed valuation $1,800, and that the town treasurer collected thereon the sum of $44.56, which was $37.10 in excess of the plaintiff's equitable share of the town tax; (4) that said sum of $44.56 was paid by the plaintiff involuntarily and under protest; (5) that the plaintiff's claim was duly presented to the town board of audit more than ten days before the commencement of this action and rejected. Upon these facts the court found that the plaintiff was entitled to a judgment for the said sum of $37.10, and for costs. Judgment being rendered in accordance with such findings, the defendant appeals.

*H. W. Chynoweth* and *L. H. Bancroft,* for the appellant.

*F. W. Burnham,* for the respondent.

WINSLOW, J. The findings of fact in this case simply find that the board of review raised the assessed valuation

of the plaintiff's personal property by the sum of $1,800, and that upon this basis the plaintiff paid a certain amount more than his equitable share of the town tax. There is no finding that the board of review acted illegally in any respect; in fact there was no evidence of any illegal action. In the absence of proof of irregularity or illegality, the action of a public body like a board of review is presumed to have been regular and valid. *Tainter v. Lucas,* 29 Wis. 375; *State ex rel. Willis v. Prince,* 45 Wis. 610. Therefore, even if there were no bill of exceptions in the case, we should have to say upon the findings that the action of the board of review is in all respects regular. The testimony preserved in the bill shows this fact also affirmatively. The only reason for setting aside the tax seems to have been that the board placed the value of the contract and bond for support at $1,800, while the court thought it was only of the value at which the plaintiff listed it; i. e., $200. Taxes are not to be set aside for this reason. If they were to be, boards of review would become ornamental only, and not useful, and their functions would be performed by the courts. The circuit court does not sit as an appellate tribunal from the board of review. This is elementary and fundamental.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint.